IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MATTHEW HOGG, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| DAVID YAGER; STEPHEN HENDRIX; | § | |
| STEVEN SHELTON; and | § | |
| VAN ZANDT COUNTY, TEXAS; | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Matthew Hogg files this Original Complaint against David Yager, and would respectfully show the Court the following:

## I.   **INTRODUCTION**

1.      Matthew Hogg was tased multiple times while fully strapped down in a restraining chair in a jail cell—while wearing only a suicide smock, no less.  Deputy David Yager pleaded guilty to a federal criminal charge in which he admitted that he "maliciously and sadistically" violated Hogg's rights when he tased him.  Hogg was also subjected to severely abusive treatment at the Van Zandt County Jail, such as being forced to drink out of a toilet for approximately a week and a half.  All of this occurred under the watch of a Sheriff who has since resigned, after being charged himself with lying to a Texas Ranger in the course of an investigation into another unlawful use of force that the Sheriff attempted to cover up.  In short, the top law enforcement

officer in Van Zandt County fostered an environment in which flagrantly unlawful uses of force and abusive treatment were not only tolerated, but facilitated.

## II.    PARTIES

2.      Plaintiff Matthew Hogg is a resident of the State of Texas.

3.      Defendant David Yager is a resident of the State of Texas and may be served at 4110 VZ County Road 2318, Canton. Texas 75103

4.      Defendant Stephen Hendrix is a resident of the State of Texas and may be served at 146 Lynnellen Lane, Wills Point, Texas 75169

5.      Defendant Steven Shelton is a resident of the State of Texas and may be served at 900 Hills Lane, Tool, Texas 75143.

6.      Defendant Van Zandt County is a political subdivision of the State of Texas and may be served through its chief executive, County Judge Andy Reese, County Courthouse, 121 E. Dallas St. Suite 206, Canton, TX 75103.

## III.    JURISDICTION AND VENUE

7.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

8.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.    FACTUAL ALLEGATIONS

9.      On February 28, 2021, Matthew Hogg was being held as a pretrial detainee at the Van Zandt County Jail.

10.     Hogg had been placed in a restraint chair.  Also, although Hogg was not suicidal and had not expressed any suicidal ideation, the Jail had placed him on suicide watch for purely pretextual reasons.  In reality, this was done simply to torment Hogg.  One of the suicide restrictions was that Hogg's clothes had been removed, so he was wearing only a suicide smock. This "precaution" was completely unnecessary, since Hogg was already fully restrained in the chair.

11.     At one point, after several hours in the restraint chair, Hogg's hands had been temporarily freed so that he could eat.

12.     A jailer named Lockhead was in the process of re-strapping Hogg's arms to the chair, but one hand was still free.  During this process, Defendant David Yager, another jailer, had been standing within a few feet, watching Lockhead restrain Hogg.  Yager had his taser unholstered and pointed at Hogg.  He had his taser drawn because he was angry at Hogg for banging his food tray against the cell door, moments earlier.

13.     Hogg, who was still holding on to his food tray with the unrestrained hand, swiped the tray at Yager's taser and knocked it out of his hand.

14.     Lockhead finished strapping Hogg's free arm into the chair, so that Hogg was fully restrained.

15.     With Hogg fully restrained, Yager punched him at least three times in the chest with the taser trigger held down in "dry stun" mode.  Yager admitted that he did so in documents filed in a federal criminal case against him, based on this incident.

16.     Yager also admitted that he knew from his experience that when it is in dry stun mode, the taser will activate when in direct contact with a person.  Yager further admitted the he knew this would cause physical pain.

17.     Since he was fully restrained, Hogg posed no threat to Yager or anyone else, which Yager has also admitted.  In fact, Yager stated that he tased Hogg "maliciously and sadistically" to cause him harm, and "not in a good-faith effort to maintain or restore discipline."  Yager also stated that he knew from his training and experience that this use of force was unnecessary and unreasonable.

### *The Jail Violated Hogg's Right to Basic Human Necessities*

18.     Hogg was kept in a restraining chair for at least 5 straight hours, because he was irritating the guards by slapping the window of his cell in a rhythmic fashion.  This in itself is abusive; the Texas Commission on Jail Standards rules state that restraints are to be used "only for the prevention of injury, and not as a punitive measure."[1]  Hogg was not given any other reason for being placed in restraints.

19.     At one point, the water pipes in the cell broke, rendering the sink and shower non-functional.  After this happened, for approximately a week and a half, the jail's guards consistently denied Hogg's requests for drinking water outside of mealtime.  With only a few exceptions during this week and a half when he was provided a cup of water, Hogg was forced to drink out of the toilet (which was still running, despite the faulty pipes).

20.     He was also placed on suicide watch for no better reason than that he had wrapped a telephone cord around his wrist.  Placement on suicide watch triggered the removal of Hogg's clothes (other than a suicide vest, and leaving the lights on in the cell throughout the night.

21.     Beyond being unjustified to begin with, these deprivations that were being passed off as "suicide precautions" were completely unnecessary and unreasonable, even if one were to assume that Hogg was an actually threat to harm himself.

---

[1] TEX. ADMIN. CODE § 273.6.

22.     First, as described above, Hogg was in a suicide smock at the same time as being fully restrained.  Clearly, a person with both arms and legs fully strapped to a chair is incapable of committing suicide and does not need to be stripped of his clothing.

23.     Second, even if the Jail had been making the 15-minute observations of Hogg required by his placement on suicide watch, it is not necessary to have the lights on at full brightness in order to ensure he is not attempting to kill himself.  Instead, the Jail simply used suicide watch as an excuse to subject Hogg to sleep deprivation.

24.     Third, after he slapped the taser out of Yager's hand with a food tray, the Jail refused to bring him food on another tray, or even a styrofoam container.  Instead, they brought him every meal heaped in a pile and wrapped in a paper towel.

25.     Finally, at one point during Hogg's two-to-three weeks in isolation, guards told him that he would not be allowed back into general population unless he took Haldol.  Haldol is a serious, mind-altering, antipsychotic drug used to treat schizophrenia, which Hogg has never been diagnosed with.  Torturing Hogg with isolation and other abuses while conditioning any relief from such treatment on taking a strong psychoactive drug is frankly unconscionable.

26.     This treatment was not an isolated act by a single, "rogue" officer.  Rather, it was a continuing course of conduct extending over ten days or more, in which every member of the jail staff who was responsible for supervising Hogg participated.

### *Hendrix and Shelton Encouraged the Wanton Use of Excessive Force*

27.     Not long after the incident in which Deputy David Yager unlawfully tased Matthew Hogg, Van Zandt County Chief Deputy Steven Shelton punched a handcuffed and compliant arrestee (Nicholas Crouch) in the face twice.  This incident occurred after a warrant was served on Crouch on September 21, 2021.

28.     Deputy Zach Sherrin, who later filed a complaint with the Texas Municipal Police Association ("TMPA") about Shelton's conduct, had accompanied Shelton and others in the detention of Crouch.  Before leaving, Crouch advised the Sheriff he was getting his gear, but was told by Sheriff Hendrix to only bring his vest and duty belt to serve the warrant and detain Crouch. This resulted in Sherrin not having a body camera with him during the incident.

29.     Despite at least eight law enforcement officers being present for Crouch's arrest, there was no body camera or dash camera footage of the incident.

30.     Additionally, just as Shelton struck Crouch, Sergeant Blake Snell attempted to pull Sherrin (who was new to the department and had just completed training) away from the scene, saying, "you don't need to see that."  Sherrin has stated that this indicated to him that unreasonable force such as that used by Shelton "had happened before."

31.      A month after the incident, and after Sherrin filed his complaint, Shelton called a meeting that included each of the other officers present for Crouch's arrest, excluding Sherrin.

32.     Shelton stated to the group that the incident had been reported to TMPA and implied that the complaint was made by Sherrin.  He then asked if there was any body camera footage of the incident, and specifically asked if Sherrin had been recording.

33.      Shelton then asked if anyone had seen anything that they believed was "out of line" during Crouch's arrest; multiple people said "no."  However, Detective Sergeant Nicole Wolstencroft later said that she wanted to speak up, because she knew Shelton was wrong to punch the handcuffed Crouch, but had felt intimidated by the fact that she was being asked directly by the accused actor (and specifically without Sherrin present) and feared for her job.

34.     This fear was bolstered when Sheriff Hendrix—who had also been personally present for Crouch's arrest—chimed in that "it will be seven against one," referring to seven opinions in that room that Shelton did nothing wrong, versus Sherrin's opinion.

35.     Shelton later pleaded guilty to federal civil rights violations, accepting a 44-month sentence.  Hendrix, Snell, and Chief Deputy Jerry Wood were indicted for lying to a peace officer during the investigation of this matter, and subsequently resigned their posts in lieu of prosecution.

36.     In short, Sheriff Hendrix and Chief Deputy Shelton—attempted to cover up Shelton's unlawful use of force by making sure there were no recordings of the incident and intimidating officers into keeping their mouths shut.

37.     Snell and Wood—also ranking and supervisory figures—participated in the coverup as well by vocally supporting Shelton when he called his meeting and lying to a Texas Ranger investigating the matter.

## V.     FIRST CAUSE OF ACTION: UNLAWFUL PUNISHMENT OF A PRETRIAL DETAINEE UNDER 42 U.S.C. § 1983 (USE OF FORCE)

38.     All preceding paragraphs are incorporated here by reference.

39.     As described above, Matthew Hogg was a pretrial detainee at the Van Zandt County Jail on February 28, 2021.

40.     At the time of the incident, he was fully restrained in a special chair designed to completely restrict the movement of all of the subject's limbs.

41.     Defendant Yager, a jailer, repeatedly tased Hogg in the chest, despite the fact that Hogg was fully restrained and presented no threat to anyone.

42.     Yager has admitted that this use of force was a violation of Hogg's Fourteenth Amendment right to due process of law, and more specifically, the right to be free from

unreasonable punishment as a pretrial detainee.  In the alternative, Yager violated Hogg's Fourth Amendment right to be free from unlawful seizure, i.e., subjected to excessive force.

43.     As a result of this unlawful use of force, Hogg suffered serious physical and mental pain.

## VI.     SECOND CAUSE OF ACTION:
## INDIVIDUAL SUPERVISORY LIABILITY

44.     All preceding paragraphs are incorporated here by reference.

45.     Defendants Hendrix and Shelton were the Sheriff and Chief Deputy Sheriff of Van Zandt County at the time of this incident.  Both had influential, supervisory roles within the department.

46.     As described above, and evidenced by the incident with Nicholas Crouch and Hendrix and Shelton's subsequent indictments, Hendrix and Shelton fostered an environment where the malicious and sadistic use of force against restrained subjects who had somehow drawn the ire of officers was not only tolerated but facilitated.

47.     This extremely toxic environment directly caused Deputy Yager to believe he could use his taser against the restrained Hogg without suffering any repercussions.

48.     As a result, Yager unlawfully tased Hogg, causing him serious physical and mental pain.

49.     Therefore, Hendrix and Shelton are liable in their individual supervisory capacities for Hogg's injuries.

## VII.     THIRD CAUSE OF ACTION:
## MUNICIPAL LIABILITY (USE OF FORCE)

50.     All preceding paragraphs are incorporated here by reference.

51.     At the time of this incident, Sheriff Hendrix was the municipal policymaker for law enforcement in Van Zandt County, including the maintenance of its jail.

52.     As described above, Hendrix fostered an environment where the malicious and sadistic use of force against restrained subjects who had somehow drawn the ire of officers was not only tolerated but facilitated.

53.     This extremely toxic environment directly caused Deputy Yager to believe he could use his taser against the restrained Hogg without suffering any repercussions.

54.     As a result, Yager unlawfully tased Hogg, causing him serious physical and mental pain.

55.     Therefore, Van Zandt County is liable for Hogg's injuries as a result of its unconstitutional policies and/or practices instituted by Sheriff Hendrix.

### VIII.     FOURTH CAUSE OF ACTION: MUNICIPAL LIABILITY (DENIAL OF BASIC NEEDS)

56.     All preceding paragraphs are incorporated here by reference.

57.     A municipality may be liable for unconstitutional conditions of confinement of a pretrial detainee when those restrictions or conditions of confinement do not serve a legitimate penological purpose and therefore amount to punishment.

58.     It has been well established for decades that all prisoners require access to basic human needs and hygiene.  As described above, Hogg was consistently denied access to drinking water, subjected to sleep deprivation, fully restrained for hours for no reason, and needlessly stripped of his clothing.

59.     This treatment was not an isolated act by a single, "rogue" officer.  Rather, it was a continuing course of conduct extending over ten days or more, in which every member of the jail staff who was responsible for supervising Hogg participated.

60.     By depriving Hogg, a pretrial detainee, of these basic needs, the County subjected him to harmful conditions of confinement that served no justifiable penological purpose. Therefore, these conditions were in fact unlawful punishment for which the County should be liable.

## IX.     <u>DAMAGES</u>

61.     As a direct and proximate result of the above-described acts and omissions of Defendant, Plaintiff has suffered serious damages.  Accordingly, Plaintiff seeks to recover all actual, compensatory, and exemplary damages which have resulted from Defendant's above-described conduct.  These damages include, but are not necessarily limited to, the following:

    a)  Mental and physical pain and anguish, both past and future;

    b)  Punitive damages against all Defendants, where applicable;

    c)  Pre- and post-judgment interest in accordance with Texas and/or federal law.

## X.     <u>JURY DEMAND</u>

62.     Plaintiff demands a trial by jury.

## XI.     <u>RELIEF REQUESTED</u>

For the reasons stated above, Plaintiff Matthew Hogg requests that Defendants be summoned to appear and answer herein and that upon final trial or hearing, a judgment be entered in favor of the Plaintiff and against the Defendants as follows:

    a)  Awarding Plaintiff actual damages in an amount that is within the jurisdictional limits of this Court;

    b)  Awarding Plaintiff punitive or exemplary damages in an amount that is within the jurisdictional limits of this Court;

    c)  Awarding Plaintiff reasonable and necessary attorney's fees and costs of court;

d)  Awarding Plaintiff pre-judgment interest at the highest rate permitted by law;

e)  Awarding Plaintiff post-judgment interest at the highest rate permitted by law; and

f)  Awarding Plaintiff all such other and further relief, at law or in equity, to which he may show himself to be entitled.

Respectfully submitted,

By:  /s/ *Don Tittle*
    Don Tittle
    State Bar No. 20080200
    don@dontittlelaw.com

Law Offices of Don Tittle, PLLC
8350 N Central Expressway Suite M1085
Dallas, Texas  75206
(214) 522-8400
(214) 389-1002 – Fax

***Attorney for Plaintiff***